177 F.3d 110
 Michael D. SMITH, Edward M. Benish, Jeffrey C. Price, and
William D. Robinson, for themselves, individually,
and as class representatives,
Plaintiffs-Appellants,
v.
CPC INTERNATIONAL, INC. and CPC Baking Distribution Co.,
Inc., Defendants-Appellees.
 Docket No. 98-7503.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 30, 1998.
Decided April 16, 1999.
 
 Scott A. Thornton, Jeffrey P. Soons, Kirk P. Thornton, Thornton & Partners, New York, New York, for Appellants.
 Patrick W. Shea, Robert A. Horowitz, Karen Y. Bitar, Harold N. Eddy, Jr., Toby S. Soli, Paul, Hastings, Janofsky & Walker, LLP., Stamford, Connecticut, for Appellees.
 Before: VAN GRAAFEILAND, CABRANES and NOONAN[1], Circuit Judges
 NOONAN, Circuit Judge:
 
 
 1
 Michael D. Smith, Edward M. Benish, Jeffrey C. Price and William D. Robinson ("plaintiffs") appeal the judgment of the District Court for the Southern District of New York (Barbara S. Jones, Judge ) in their suit against CPC International, Inc. and CPC Baking Distribution Co., Inc. ("CPC") asserting claims under ERISA, 29 U.S.C. §§ 1104, 1106 & 1140 and state laws claims of negligent misrepresentation, breach of contract, and breach of the implied covenant of good faith and fair dealing. The case involves the arrangements of the maker of Thomas English Muffins and other baked products with the distributors who deliver the goods to retail outlets. Holding that the agreements of the company with the distributors, read as a whole, restrict the company's right to termination to good cause, we reverse the district court's grant of summary judgment on the contract and covenant claims and remand.
 
 FACTS
 
 2
 The plaintiffs were in the business of using their own trucks to deliver Thomas English Muffins and other Thomas baked goods from a CPC depot in Milton, New York. Plaintiff Edward M. Benish acquired his delivery route by paying a predecessor deliveryman $15,000 in 1973; his route was in northeastern Orange County, including Cornwall, Highland Falls, Newburgh, Vails Gate, and West Point. Plaintiff Jeffrey C. Price took over his route from his father in March 1977; his father had previously paid a predecessor deliveryman for the route in the mid-1960s. His route lay in Dutchess County, including Authersburg, Hopewell Junction, LaGrange, Millbrook, Pleasant Valley, and Poughkeepsie. Plaintiff William D. Robinson acquired his route in December 1978 by paying $13,000 to his predecessor deliveryman. The route was in Dutchess and Putnam Counties, including Beacon, Brinkerhoff, Cold Spring, Fishkill, and Wappingers Falls. Plaintiff Michael Smith acquired his route by paying $14,000 to a predecessor deliveryman in December 1978. His route was in Orange County, including Goshen and Middletown, and, until 1993, in northern New Jersey, including Franklin, Milton, Sussex, and Vernon.
 
 
 3
 Each plaintiff was given at the beginning of service on the routes a substantially identical letter from CPC accompanied by a document entitled "Distribution of S.B. Thomas Products Performance Standards." The letter stated:
 
 
 4
 It is understood that we do not assign territory on a permanent basis and our decision to continue to ship products for your distribution is contingent upon our satisfaction with this arrangement in the future. It must also be understood that you do not have a franchise to deliver our products. We will conduct our relationship with you in an efficient, honorable and businesslike manner.
 
 
 5
 The Performance Standards attached to this letter were thirteen in number and included such matters as getting the product on shelves and on displays in line with Thomas's code, service of the routes a minimum of five days a week and an aggressive sales performance. The Performance Standards were introduced with this statement: "It must be understood that Thomas views all these standards as basic and reasonable and as essential to its business success. Thomas therefore reserves the right to discontinue its business relationship with you should you not consistently fulfill these standards."
 
 
 6
 On February 4, 1997 each plaintiff was sent a substantially identical letter by CPC that began: "It is my pleasure to announce an exciting opportunity which I believe will assist Independent Operators, as well as the company, to recognize increased income and growth in the future." The exciting opportunity was to pay CPC for the right to distribute Thomas products on routes they were already operating. The letter stated that it also served "to formally notify you that our current relationship will terminate effective with the sale of our 'new' routes."
 
 
 7
 The plaintiffs did not avail themselves of this opportunity and their routes were terminated.
 
 PROCEEDINGS
 
 8
 On April 22, 1997 the plaintiffs filed their amended complaint in the district court alleging breach of ERISA, breach of the New York Franchise Act, breach of the New Jersey Franchise Practices Act, negligent misrepresentation, breach of contract, and breach of the implied covenant of good faith and fair dealing. The district court dismissed the ERISA, franchise, and negligent misrepresentation claims for failure to state a cause of action. The district court granted CPC's motion for summary judgment on the contract and covenant claims. The district court ruled that the introductory letter sent to each plaintiff and the plaintiffs' acquiescence in it "for anywhere from eighteen to twenty-four years" made it a binding contract, under which CPC was free to terminate each distributor for business reasons. There was no material fact in dispute as to the business reasons for which CPC had acted. Therefore no issue remained for trial. Final judgment against the plaintiffs was entered on March 11, 1998.
 
 
 9
 The plaintiffs do not appeal the dismissal of the franchise claims, but do appeal the judgment as to the other issues decided against them by the district court.
 
 ANALYSIS
 
 10
 We write this opinion only to decide the issues related to plaintiffs' claims for breach of contract and breach of the covenant of good faith; we decide the remaining issues in an unpublished summary order issued today. See Smith v. CPC International, Inc., No. 98-7503 (2d Cir. April, 1999).
 
 Breach of Contract and of Covenant
 
 11
 The district court correctly held that the introductory letter, acted upon by the plaintiffs without objection, constituted an integrated agreement not to be altered by parol evidence. The plaintiffs contend that the district court erred in failing to recognize that the contract allowed CPC to terminate only for good cause. CPC concedes on appeal that only for-cause termination would be permissible, but asserts that the court, in fact, identified good cause when it concluded that the undisputed evidence demonstrated that CPC had terminated on account of "business reasons."
 
 
 12
 At the time of the motion for summary judgment CPC had not presented undisputed facts showing it had good cause to terminate the distributorship. See Jabbour v. Albany Medical Center, 237 A.D.2d 787, 654 N.Y.S.2d 862, 865 (N.Y.App.Div.1997). As it does on this appeal, CPC maintained that it had "legitimate business reasons," namely to improve its distribution system, to foster the entrepreneurial spirit of its distributors, and to "achieve a one time gain from the sale of those routes." Improvement of CPC's distribution system is scarcely intelligible as a reason because the distributors were told they could buy the old routes. CPC's letter of February 1997 put the description of the routes as "new" in quotation marks because the routes were obviously the old ones. CPC's desire to make the distributors put in their own money coincides with CPC's desire to make some extra money for itself. At the summary judgment stage there was a factual dispute as to whether CPC had breached the agreements and done so in bad faith to enrich itself. In oral argument of this appeal, CPC conceded that it could not in good faith have terminated a distributor a week or a month after the distributor had (with CPC's knowledge) paid money to a predecessor to acquire his route. The concession points to the factual nature of the question whether termination after a distributor has put 24 years of service into a route can be in good faith. The plaintiffs have worked for years outside the metropolis in towns and counties whose names carry a connotation of pleasant living. That living has been made pleasanter by the availability of Thomas English Muffins brought by the deliverymen to the local stores from Authersburg to Wappingers Falls. If the deliverymen are to lose their routes, the defendant has the burden of establishing good cause. This conclusion applies both to the plaintiffs' contract claim and their claim for breach of the implied covenant of good faith and fair dealing.
 
 
 13
 In dicta, construing a similar CPC contract for the distributors of Thomas products in Connecticut, we have come to a similar conclusion. Petereit v. S.B. Thomas Inc., 63 F.3d 1169 (2d Cir.1995). As we there stated, CPC had the right to alter territory, but under the terms of the agreement "may not terminate a distributor without good cause." Id. at 1179.
 
 
 14
 For the forgoing reason the judgment of the district court is REVERSED and REMANDED as to the claims of breach of contract and breach of covenant.
 
 NOONAN, Circuit Judge, concurring:
 
 15
 While I agree with the result reached by the court, it appears to me that the district court, however, erred in not interpreting the contract as a whole. The Performance Standards were a part of the agreement. As CPC put it, these standards were "basic." These standards must be read as part of the contract, qualifying the statement in the introductory letter, "our decision to continue to ship products for your distribution is contingent upon our satisfaction with this arrangement in the future." CPC's reservation of rights "to discontinue its business relationship" for failure to "consistently fulfill these standards" would have no meaning if CPC was free for any business reasons it saw fit to discontinue the distributorship.
 
 
 
 [1]
 The Honorable John T. Noonan, Jr., of the United States Court of Appeals for the Ninth Circuit, sitting by designation